| DISTRICT COURT OF THE VIRGIN ISLANDS |
| :---: |
| DIVISION OF ST. THOMAS AND ST. JOHN |

UNITED STATES OF AMERICA

v.                                          3:25-cr-00050-RAM-EAH

MARLENIS PENA PENA,

                    Defendant.

_____

TO:    Natasha Baker, Esq., AUSA
       Matthew A. Campbell, Esq., FPD
       Tiana Marie Brown, Esq., AFPD

## ORDER

**THIS MATTER** comes before the Court on an Emergency Motion for Stay of Sentence Pending Appeal, filed on March 27, 2026 by Attorney Tiana Marie Brown, AFPD, counsel for Defendant Marlenis Pena Pena. Dkt. No. 60. The Court set an expedited briefing schedule, and stayed execution of the sentence (including surrender on March 27, 2026 and a ten-day period of incarceration) pending further Order of the Court. Dkt. No. 61. The Government filed a Response on March 30, 2026, Dkt. No. 62, and the Defendant filed a Reply on March 31, 2026, Dkt. No. 64. For the reasons that follow, the Court will deny the Emergency Motion.

## BACKGROUND

### I.    Bench Trial and Conviction

In June 2025, the Government charged Ms. Pena Pena by Information with Illegal Entry by an Alien, in violation of 8 U.S.C. § 1325(a)(1). *See* Dkt. No. 11. The Court eventually held a bench trial on February 25, 2026.[1]

The evidence at trial showed that Ms. Pena Pena and others arrived on a secluded,

---

[1] The initial Bench Trial, held August 7, 2025, was continued based on a discovery issue. Dkt. No. 29.

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 2

unlit St. John beach known for alien smuggling (the beach was only a 10-minute boat ride from Tortola) on May 8, 2025 around 9:00 p.m. U.S. Customs and Border Patrol Agents, who had received some intelligence about this matter, were dispatched. Two agents found Ms. Pena Pena hiding in the bushes. Ms. Pena Pena allowed one of the agents to retrieve her passport—issued from the Dominican Republic—from her purse. She said that she had arrived on a boat from Tortola that day. The agents brought her and another woman they had apprehended to the Homeland Security Investigations Office on St. Thomas. At the office, an agent ran Ms. Pena Pena's passport through systems checks to ascertain if she had previously been arrested and charged, whether she had had prior encounters with immigration officials, and whether she had any valid document (such as a non-immigrant or immigrant visa) to be in the United States. The data checks revealed that Ms. Pena Pena had no status in the United States, and that Ms. Pena Pena had requested a voluntary departure to the Dominican Republic when she was stopped by law enforcement at Cyril King Airport on St. Thomas in September 2015. The agent also obtained from Ms. Pena Pena a COVID 19 vaccination card showing that she had received two COVID shots on St. John on February 2, 2022 and March 9, 2022. In the DHS Personal History Report, Ms. Pena Pena responded "Dominican Republic" to questions asking about her citizenship and place of birth. Her three children were born in the Dominican Republic, and currently lived on St. John.

Ms. Pena Pena stated that she wanted to be sent back to the Dominican Republic. The video recording of the interview showed Ms. Pena Pena responding, "I want to be sent back to my country." "I just want to be sent back to Santo Domingo." After she refused to answer any more questions (following the Miranda warnings), the interview ended.

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 3

Based on the evidence presented, the Court concluded in a March 2, 2026 Memorandum Opinion that the Government had proven beyond a reasonable doubt that Ms. Pena Pena was an alien, and that she knowingly entered the United States at a time or place other than as designated by immigration officers. Dkt. No. 35. The Court found her guilty of violating 8 U.S.C. § 1325(a)(1) and set sentencing for March 25, 2026. Dkt. No. 56.

## II.    Sentencing

At the sentencing hearing, the Government noted that the statutory sentencing range for a § 1325(a) offense was zero to six months incarceration. Acknowledging that most sentences for these offenses had been time served, the Government pointed out that Ms. Pena Pena had been regularly going in and out of the United States, as shown by her 2015 request for voluntary departure at the St. Thomas airport, her COVID card showing vaccinations in St. John in 2022, and her latest entry in May 2025. The Government argued that Ms. Pena Pena had no respect for the immigration system: there was no reason she did not seek to legally enter, but she went through illegal channels. When she was caught, she nonchalantly requested to be sent back. These facts and circumstances did not merit time served but a sentence at the lower end of the statutory range as a message of deterrence to both Ms. Pena Pena and to traffickers of illegal aliens. The Government asked for a 30-day sentence of incarceration.

Ms. Pena Pena's attorney asked for time served, given that this was Ms. Pena Pena's first encounter with the criminal justice system. On the night she was arrested, she spent the evening in jail, away from her children. Ms. Pena Pena had worked from age 13, she came to the United States for a better life, she raised three well-mannered children and helped

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 4

support her family, and she had complied with her conditions of release while awaiting trial.

She now understands that permission must be sought. If the Guidelines were to apply, Ms.

Pena Pena would be a zero-point offender in Zone A. While the Government had mentioned

that some § 1325 offenders were sentenced to five days or six months, it did not mention

other aggravating circumstances,

The Court distinguished Ms. Pena Pena's circumstances from the other § 1325(a)

cases it had adjudicated, noting that she had been in the United States, voluntarily left, and

found her way back. Most of the other § 1325 defendants had sought to normalize their

presence by filing petitions for asylum or other relief, but Ms. Pena Pena did not do so and

had no pending applications. If she had come to seek opportunity, she could have done so

the right way. But her self-deporting in 2015 indicated that she knew she did not enter

lawfully. The Court ascertained that DHS had placed a detainer on Ms. Pena Pena, and asked

representatives of the U.S. Marshals Service and the Probation Office about the process of

incarceration if a term of imprisonment would be imposed.

After taking a short recess and reviewing the opinion it issued and the reasoning it

employed in finding Ms. Pena Pena guilty, and considering the arguments of counsel and the

18 U.S.C. § 3553(a) factors, the Court noted that the § 3553(a) factors that stood out in this

case were the history and characteristics of Ms. Pena Pena and the need to avoid

unwarranted sentencing disparities among similarly situated defendants. In comparing Ms.

Pena Pena to Defendants who had been sentenced to time served, the Court expressed its

view that she was not similarly situated. She had been in the country and had left multiple

times, and she never filed any applications to allow her to stay. The Court emphasized that it

was important that immigrants arrive via legal means, not to flagrantly disregard immigration laws or to believe that the borders were open and that they could come and go as they pleased. Because the Court did not view Ms. Pena Pena as similar to the other Defendants sentenced to time served, the Court ordered her remanded to the Bureau of Prisons for ten days. In the Court's view, this would serve to instruct her that violating laws had consequences and deter her and other persons who may think or act like her. Upon looking at the § 3553(a) factors, the evidence in the case and counsel's arguments, the Court believed its sentence was sufficient but not greater than necessary to comply with the purposes of sentencing. The Court imposed the statutorily mandated $10 special assessment and did not impose any fine. It permitted her to self-surrender by 3:00 p.m. on Friday, March 27, 2026.

The Court noted in passing that because a detainer was in place, the Executive Branch would detain her and remove her—a process that would happen more smoothly upon being remanded to the Bureau of Prisons for processing in Puerto Rico.

Ms. Pena Pena's counsel orally moved for a stay of the sentence pending appeal to permit counsel to file necessary documentation prior to Ms. Pena Pena submitting herself to custody. The Court inquired whether there was a legal basis to support the stay; counsel responded her office needed time to put their reasons for a stay in writing. Counsel also indicated the Defendant was going to appeal her sentence only, not her conviction. The Court indicated that it had not heard any reasoning to support a stay but instructed counsel to file any motions for a stay on an emergency basis.

The Court entered Judgment on March 25, 2026, Dkt. No. 58. Ms. Pena Pena filed a

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 6

Notice of Appeal on March 26, 2026, challenging the final judgment, conviction, and sentence imposed on March 25. Dkt. No. 59.

### III.    The Emergency Motion

On March 27, 2026, Ms. Pena Pena filed her Emergency Motion. Dkt. No. 60. It set forth the statute providing for release or detention of a defendant pending appeal: 18 U.S.C. § 3143(b)(1). The statute required detention unless the judicial officer first finds by clear and convincing evidence that the defendant was not a flight risk or danger to the community, and then finds that the appeal was not for purposes of delay but raised a substantial question of law or fact likely to result in a sentence that did not include a term of imprisonment. *Id.* at 3.

Ms. Pena Pena first contends that she is neither a flight risk nor a danger to the community, given that the Court's factual findings showed she wanted to be in the United States. *Id.* Since her May 25, 2025 return, she had been under pretrial supervision and she had not violated her conditions of release. No evidence showed she presented a risk of flight or posed a danger to the community, given that she has no prior criminal convictions. The act of illegal entry did not pose a danger to the community. *Id*.

Ms. Pena Pena asserts that her appeal was not brought for the purpose of delay as she has contested her guilt in this matter and proceeded to trial. She has raised "substantial arguments" for no jail time and seeks further review of the verdict and sentence. *Id.* at 4. She seeks to prevent her appeal from becoming moot, which would occur if she was required to surrender as currently scheduled to serve her sentence. *Id.*

Finally, her appeal raises a substantial question likely to result in a sentence that does not include a term of imprisonment. *Id*. at 4-8. Acknowledging that sentencing is a

discretionary matter, Ms. Pena Pena emphasizes that sentencing should seek to avoid unwarranted disparities. Sentencing her to ten days imprisonment would create disparities with other defendants charged with illegal entry in this district. She provides a list of 32 cases where a defendant was sentenced to time served or dismissal pursuant to diversion, adding that the only illegal entry defendants receiving sentences beyond time served were those that absconded during the pendency of their illegal entry case. *Id.* at 5-6.

Ms. Pena Pena understood the Court's reasoning that a ten-day period of incarceration was necessary to be based on the fact that she had been in the United States, self-deported, then returned, and therefore deterrence through incarceration was required. *Id.* at 6. But even if Ms. Pena had committed the felony offense of illegal re-entry, pursuant to 8 U.S.C. § 1326, incarceration would not be necessary. *Id.* at 7.  This is because, for that felony offense, the U.S. Sentencing Guidelines would apply. Her base offense level would have been 8; she would have received a two-level reduction as a zero-point offender, such that her total offense level would have been 6; she would have a Criminal History Category of I; and her guidelines range would have been 0-6 months in Zone A. *Id.* The Sentencing Commission established a presumption that a "sentence other than a sentence of imprisonment" was "generally appropriate." U.S.S.G. § 5C1.1, Commentary Application Note 9. Accordingly, if she had been convicted of a § 1326 felony, the fact that she previously had been in the United States would not have overcome the presumption because prior entry into the U.S. is a necessary element of the crime of illegal entry (not an aggravating factor). Thus, since a prior entry would not justify a term of imprisonment for felony illegal re-entry, "logic dictates that it would not justify a term of imprisonment for the lesser-included petty offense of illegal

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 8

entry." Dkt. No. 60 at 7. Counsel points out that even some "similarly situated illegal re-entry

defendants" received time served or probation (listing seven such defendants). *Id.* at 8. The

Court's statement that additional incarceration would help facilitate deportation does not fit

within the 18 U.S.C. § 3553(a) factors and was not a proper consideration. *Id.* Accordingly,

because there is a substantial likelihood that Ms. Pena Pena's sentence will be reversed on

appeal and she will receive a sentence not including a term of imprisonment, she satisfies all

requirements of 18 U.S.C. § 3143(b)(1) for a stay pending appeal and the Emergency Motion

should be granted. *Id.*

The Defendant concludes by requesting that, if the Court denies its Emergency

Motion, it grant a one-week stay of sentence so she can appeal the denial to the District Judge.

If that week concludes on April 3, 2026, a court holiday, she asks that the deadline be

extended to April 6, 2026, the next business day. *Id.* at 9.

**IV.    Government's Opposition**

The Government reprised its arguments for a one-month sentence of imprisonment

in this case, based on the § 3553(a) factors: (1) the Defendant entered the United States

illegally at least three times; (2) the first time she was encountered by law enforcement

agents, she was granted voluntary departure to her home country; (3) despite the number

of times she returned and stayed in the United States, she never sought legal status (as had

other defendants sentenced by the Court); (4) her cavalier attitude toward the immigration

system was reflected in her statement during her interview that she just wanted to be sent

back to her country, which showed a lack of respect for immigration law since she had

previously been "sent back to her country"; and (5) the facts and circumstances surrounding

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 9

her encounter with law enforcement evidenced a desire to enter the U.S. undetected. Dkt. No. 62 at 1-2.

The Government also set forth 18 U.S.C. § 3143(b) as governing whether Ms. Pena Pena qualified for "bail" pending appeal. *Id*. at 3 (citing *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985)). Ms. Pena Pena failed to satisfy the substantial question requirement, because her argument was based on the position that a ten-day sentence for a woman with no prior criminal history, after being found guilty of the petty offense of illegal entry, was unreasonable. *Id*. at 4. However, appellate review of the substantial reasonableness of a sentence is highly deferential and will be affirmed unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons provided by the district court. *Id.* at 4-5. The Third Circuit reviews the substantial reasonableness of a sentence under an abuse of discretion standard, asking whether the record reflects rational and meaningful consideration of the sentencing factors. *Id.* at 5 (citing *United States v. Clark*, 726 F.3d 496 (3d Cir. 2013)). The proponent challenging the sentence bears the burden of showing such unreasonableness. *Id*. at 5 (citing *United States v. Figueroa*, 729 F.3d 267 (3d Cir. 2013)). After citing these cases, the Government states "for the reasons cited above" it requested that Defendant's motion be denied. *Id.*

## V.    The Defendant's Reply

In her Reply, Ms. Pena Pena argues once again that her sentence creates unwarranted sentencing disparities, pointing out Defendants who received time served or lesser sentences, and again points to the Sentencing Guidelines for support. Dkt. No. 64. It posits that the Government waived a number of arguments as well. *Id.*

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 10

## DISCUSSION

### I.    Legal Standard

Both parties have pointed the Court to 18 U.S.C. § 3143, entitled "Release or detention of a defendant pending sentence or appeal," as setting forth the standard to apply when considering whether a convicted defendant should be detained pending appeal. It provides, in pertinent part:

> **(b) Release or detention pending appeal by the defendant.--(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
>
> > **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> >
> > **(i)** reversal,
> >
> > **(ii)** an order for a new trial,
> >
> > **(iii)** a sentence that does not include a term of imprisonment, or
> >
> > **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. § 3143(b). The "definition of a substantial question requires that the issue on appeal be significant in addition to being novel, not governed by controlling precedent or fairly

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 11

doubtful." *United States v. Smith,* 793 F.2d 85, 88 (3d Cir.1986). To be "significant" the issue must be "fairly debatable among jurists." *Id.* at 89–90.

The offense of illegal entry, pursuant to 8 U.S.C. § 1325(a), is a Class B misdemeanor. *See United States v. Laville*, 480 F.3d 187, 191 (3d Cir. 2007) (indicating that illegal entry is a misdemeanor offense); *accord United States v. Melendez Ferman*, No. 24-1455, 2025 WL 48331, at *1 (3d Cir. Jan. 8, 2025); *United States v. Martinez-Avila*, 830 F. App'x 971, 972 (9th Cir. 2020). Penalties include, inter alia, a term of imprisonment of up to six months. The U.S. Sentencing Guidelines do not apply to "any count of conviction that is a Class B or C misdemeanor[.]" U.S.S.G. § 1B1.9. "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in [18 U.S.C. § 3553(a)(2)]." *United States v. Passarella*, 460 F. App'x 145, 148 (3d Cir. 2012) (citing 18 U.S.C. § 3553(b)(1)).

## II.    Application

Ms. Pena Pena argues that: (1) she is not likely to flee or pose a danger to the community if released; (2) her appeal is not for purposes of delay; and (3) her appeal raises a substantial question of law or fact and is likely to result in a sentence of no incarceration. The Government apparently agrees with points (1) and (2) because it does not challenge Ms. Pena Pena's arguments regarding those factors. Rather, it challenges the third factor— whether Ms. Pena Pena has raised a substantial question likely to result in a sentence of no incarceration. It asserts that she has not met her burden on that factor. The Court agrees.

Ms. Pena Pena's "substantial question" argument focused on her view that a ten-day term of incarceration would constitute an "unwarranted sentence disparit[y] among

defendants with similar records who have been found guilty of similar conduct," in contravention of 18 U.S.C. § 3553(a)(6). She cited over 30 cases in this District where a defendant was convicted of violating § 1325(a) and was sentenced to either time served or dismissal pursuant to diversion. She apparently believes that the number of cases she can point to necessarily overcomes the Court's reasoning in imposing a sentence, thereby presenting a "substantial question."

But the Court specifically relied on the unwarranted disparities factor in showing that a sentence of time served imposed in five other § 1325 cases it had adjudicated, was not appropriate because it explicitly did not view Ms. Pena Pena as similarly situated to those other Defendants.[2] In contrast to those Defendants, the evidence showed that she had entered the United States and left two previous times (2015 and 2022) prior to her latest entry, in the dark of night on a secluded St. John beach. It was also clear that she had an extremely lackadaisical attitude toward the U.S. immigration laws: in 2015, she requested voluntary departure, and she was permitted to leave; then, when she was apprehended in 2025, she again expressed her desire to return to her country, as if her surreptitious entry was "no big deal" where the only price she would pay for illegal entry would be to be sent back to her country, the Dominican Republic. This shows that she was familiar with the U.S.

---

[2] Needless to say, the Court's familiarity with the cases it has adjudicated is much more substantial than the listing provided by Defendant, which provides no detail concerning the facts and circumstances that may have prompted that Magistrate Judge to impose a sentence of time served in those cases. *See United States v. Andrews*, No. 04-cr-38, 2014 WL 3411478, at *6 (D.V.I July 14, 2014) (rejecting unwarranted disparities argument by pointing out that petitioner "relies only on the sentence itself and ignores any aggravating or mitigating factors and personal characteristics of the defendants.").

immigration laws but chose not to comply. In most of the § 1325 cases the Court has adjudicated, the defendants sought to regularize their status in the United States through applications for asylum and work permits. The record before this Court reveals that Ms. Pena Pena never did so. With her children admittedly still in the United States, the Court looks askance at counsel's representation that Ms. Pena Pena has learned her lesson from her overnight stay in custody and navigating the criminal justice system for the past year, given that she will clearly be tempted to return to the country. Thus, deterrence was necessary.

The Court thus set out its reasoning to distinguish Ms. Pena Pena's case in showing why its ten-day sentence would not contravene S 3553(a)(6)'s provision that courts should avoid unwarranted sentencing disparities among similarly situated defendants.[3] The Court did not agree with the Government's request of a 30-day period of incarceration, or the Defendant's request of time served, but believed that a ten-day period was warranted. It is beyond cavil that, when sentencing a defendant, a court exercises its discretion in considering the relevant § 3553(a) factors. *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006) (evaluating reasonableness of a sentence in light of the § 3553(a) factors and noting the party challenging the sentence has the burden of proving unreasonableness). The Third Circuit reviews the substantive reasonableness of a sentence for abuse of discretion.[4] *United*

---

[3] "District courts are not required to make specific findings of fact with respect to each of these factors; rather, a statement that the district court has considered the statutory factors is sufficient." *United States v. Melvin*, 978 F.3d 49, 52-53 (3d Cir. 2020) (citation modified).
[4] The Defendant does not challenge the procedural reasonableness of the sentence. See, e.g., *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). As indicated above, the Guidelines do not apply to this offense. "Absent any significant procedural error, we must give due deference to the district court's determination that the § 3553(a) factors, on a whole, justify the sentence." *Id.* at 568 (citation modified).

*United States v. Pena Pena*
3:25-cr-00050-RAM-EAH
Order
Page 14

*States v. Jone*s, 326 F. App'x 90, 92 (3d Cir. 2009). "Reasonableness" is a range. *United States*

*v. Jiminez*, 513 F.3d 62, 91 (3d Cir. 2008). In *United States v. Deffenbaugh,* 709 F.3d 266, 274

(4th Cir. 2013), the Fourth Circuit opined that its review of "a sentence imposed for an

offense for which there is no Guideline [examines] whether it is plainly unreasonable."

(citation modified; citing 18 U.S.C. § 3742(a)).

A defendant making a § 3553(a)(6) challenge to the reasonableness of her sentence

"bears the burden to establish that his circumstances exactly paralleled those of the

defendants who received significantly lower sentences" and must affirmatively show that

other defendants who received lesser sentences are similarly situated." *Jones*, 326 F. App'x

at 92. The Defendant's list of 32 cases where defendants received time served did not meet

her burden to demonstrate that her circumstances "exactly paralleled" those of other § 1325

defendants. *Id.* at 93. Moreover, the Court endeavored to provide a "rational and meaningful

consideration of the factors enumerated in 18 U.S.C. § 3553(a)," and addressed in detail the

§ 3553(a)(6) issue that Ms. Pena Pena raises in her Emergency Motion. *Clark,* 726 F.3d at

502.[5]

Having failed to meet her burden to show the "substantive unreasonableness" of the

ten-day sentence,[6] it follows that Ms. Pena Pena has also failed to raise a "substantial

---

[5] The Court rejects Ms. Pena Pena's argument that it considered the execution of her ICE detainer in fashioning its sentence. Dkt. No. 60 at 2 & n.5; Dkt. No. 64 at 3. The Court did not do so. It merely made inquiries as to how the detainer worked as a practical matter to understand the process upon Ms. Pena Pena's self-surrender.

[6] The Court also rejects Ms. Pena Pena's argument based on violations of 8 U.S.C. § 1326, Illegal Re-Entry, Dkt. No. 60 at 7, because, as she acknowledged, the Guidelines do not apply to § 1325. In any event, the advisory Guidelines "do not fix the permissible range of

question" that her issue on appeal is both "significant" and "novel, not governed by controlling precedent or fairly doubtful." *Smith,* 793 F.2d at 88, 89–90. Accordingly, the Court will deny Ms. Pena Pena's Emergency Motion.

As to Ms. Pena Pena's request that, if the Court denies her Emergency Motion, it nevertheless permit a stay of sentence in order that she can appeal that denial, Dkt. No. 60 at 9, the Court will deny such relief. Her Emergency Motion requests a stay pending appeal in the form of a stay of judgment, and the Court has concluded that she did not meet her burden for such relief. Ms. Pena Pena asks the Court to ignore its holding and nevertheless grant her relief without providing any legal basis to do so. The Court will not grant such relief.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Ms. Pena Pena's Emergency Motion, Dkt. No. 60, is **DENIED.** It is **FURTHER ORDERED** that Ms. Pena Pena shall self-surrender to the United States Marshal Service on **Thursday, April 2, 2026 no later than 3:00p.m.**

ENTER:

Dated: March 31, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE

---

sentences. They merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Beckles v. United States*, 580 U.S. 256, 263 (2017).